BORDER STATES PAVING, INC., a North Dakota Corporation with its principal place of business in Fargo, North Dakota, et al., Appellee,

v.

The SOUTH DAKOTA STATE DEPARTMENT OF REVENUE, a State Agency with its principal place of business in Pierre, Hughes County, South Dakota, Appellant.

No. 16187.

Supreme Court of South Dakota.

Argued Sept. 1, 1988.

Reassigned Jan. 19, 1989.

Decided March 22, 1989.

Ronald G. Schmidt of Schmidt, Schroyer, Colwill & Barnett, P.C., Pierre, for appellee.

Janice Waysman, Sp. Asst. Atty. Gen., Pierre, for appellant, Roger A. Tellinghuisen, Atty. Gen., Pierre, on the brief.

HENDERSON, Justice (on reassignment).

## PROCEDURAL HISTORY/ISSUES

The South Dakota Department of Revenue (Department) appeals a judgment of the circuit court for Hughes County which reversed the Secretary of Revenue's decision affirming imposition of special fuel tax on special fuel burned in hot-mix plants owned and operated by Border States Paving, Inc. (Border States), and other contractors[1] during highway construction projects. Department argues that its assessment of special fuel tax is authorized by statute (SDCL 10–48–2.1) and asserts

---

1. By agreement of the parties, the appeals of Arcon Construction Company, Inc., Johnson Construction Company, Inc., and Hills Materials Company were consolidated with Border States' case during the administrative proceeding.

that the circuit court erred in ruling that the one-year statute of limitations on claims for recovery of overpaid taxes, penalties and interest contained in SDCL 10–59–19 was inapplicable. We affirm the trial court's reversal of Department's imposition of tax. However, we reverse the trial court's decision on the issue created under SDCL 10–59–19, solely because that issue was not properly before that court.

## FACTS

In 1984, Department promulgated ARSD 64:14:01:12, which provided:

> *64:14:01:12. Fuel used in highway construction equipment.* All fuel, other than grades 4, 5, and 6, used in equipment for highway construction work paid for wholly or in part by public funds is subject to the state fuel tax. This includes fuel used in stationary engines, off-road major movable equipment, licensed highway vehicles, and hot-mix plants. Fuel used in a permanent hot-mix plant is taxed on that percentage of the fuel used for publicly funded contract work during the tax return period. Fuel consumed which is not subject to state fuel tax is subject to state use tax.
>
> *Source:* 11 SDR 1, amended July 19, 1984, effective October 1, 1984.
>
> *General Authority:* SDCL 10–1–13, 10–48–54.
>
> *Law Implemented:* SDCL 10–48–2.

Pursuant to this regulation,[2] Department audited Border States, a North Dakota corporation, and assessed $68,316 in special fuel taxes, plus $10,601 in interest, for liquefied petroleum gas (LPG) used to heat asphalt in Border States' stationary hot-mix plants located on private property some distance from the actual construction sites. None of this fuel was used to propel vehicles. Border States is a licensed bulk purchaser of special fuel.

Border States paid the assessed taxes, under protest, on April 10, 1987, applied for refund of the questioned payments on May 5, 1987, and requested an administrative hearing on the matter under SDCL 10–59–9. By agreement of counsel, the disposition of Border States' claim would apply to similar appeals by Arcon Construction Company, Inc., Hills Materials Company, and Johnson Construction Company. A departmental hearing was held on May 7, 1987, and the Secretary of Revenue issued his findings of fact, conclusions of law, and order upholding the tax assessments on September 28, 1987.

In a letter dated September 10, 1987, counsel for the contractors petitioned the Secretary to issue a declaratory ruling on the applicability of SDCL 10–59–19 [3] to the contractors' claims. The Secretary issued his declaratory ruling, finding SDCL 10–59–19 to apply, on October 16, 1987. The petition for the declaratory ruling and the ruling itself were never made a part of the administrative record.

Border States filed a notice of appeal in circuit court, from "the Findings of Fact, Conclusions of Law and Final Decision of the South Dakota Department of Revenue made and entered by its Secretary of Revenue, Ronald J. Schreiner, on September 28, 1987...." Although the notice of appeal made no reference to the Secretary's declaratory ruling, dated October 16, 1987, the issue of the applicability of SDCL 10–59–19 was included in Border States' Statement of Issues, filed in the circuit court. The circuit court ultimately reversed the Secretary's decisions on the tax assessment and application of SDCL 10–59–19.

## DECISION

Department argues that SDCL ch. 10–48 authorizes assessment of special fuel tax on fuel burned in hot-mix plants and other stationary construction equipment located

---

**2.** The first sentence of ARSD 64:14:01:12 was amended, effective January 12, 1986, to delete reference to fuel "other than grades 4, 5, and 6," a change which has no bearing on the issues of this appeal.

**3.** SDCL 10–59–19 provides, in pertinent part:

A taxpayer seeking recovery of an allegedly overpaid tax, penalty or interest shall file a claim for recovery with the secretary, within one year from the date the tax, penalty or interest was paid. A claim for recovery not filed within one year of the date the tax was paid is barred.

off public highways. Department's position rests on SDCL 10–48–2.1, which provides:

> The tax as provided by § 10–48–2 shall be paid by any person, firm, or public or private corporation on any fuel used in any highway construction work performed under a contract which is paid for all or in part from public funds, regardless of whether such fuel is consumed on the public highways or not.

This statute, according to Department, imposes a tax independent of SDCL 10–48–2.[4] Further, as SDCL 10–48–2.1 is separate from SDCL 10–48–2, Department maintains that the tax exemptions of SDCL 10–48–3 do not apply to SDCL 10–48–2.1. If Department is correct, ARSD 64:14:01:12 is justified as a regulation interpreting SDCL ch. 10–48, as authorized by SDCL 10–48–54.[5] We disagree.

■ Statutes must be construed according to their intent, and the intent must be determined from the statute as a whole, as well as enactments relating to the same subject. *In re Appeal of AT & T Information Systems*, 405 N.W.2d 24, 27 (S.D. 1987). It is inappropriate to select one statute on a topic and disregard another statute which may modify or limit the effective scope of the former statute. *Id.* at 28. Resolution of this dispute depends upon interpretation and application of a statute which is a question of law, and we accord no deference to the conclusions reached by the Department or the circuit court. *Sioux Falls Newspapers, Inc. v. Secretary of Revenue*, 423 N.W.2d 806, 807

(S.D.1988); *see also Permann v. Department of Labor*, 411 N.W.2d 113, 117 (S.D. 1987). Here, Department's interpretation of SDCL 10–48–2.1 can survive only by totally disregarding the balance of SDCL ch. 10–48, all of which concerns special fuel tax.

■ By its own terms, SDCL 10–48–2.1 does not stand alone. This section begins by referring to SDCL 10–48–2: "The tax as provided by § 10–48–2 shall be paid ...," in contrast to SDCL 10–48–2, which begins: "A tax ... is imposed...." It is clear that SDCL 10–48–2.1 is merely an extension of SDCL 10–48–2. This is an essential point, for it follows that the exemptions to the special fuel tax provided in SDCL 10–48–3 apply to SDCL 10–48–2.1, undercutting Department's argument that there are no exemptions to SDCL 10–48–2.1.[6] SDCL 10–48–3(1) creates an exemption to the special fuel tax "imposed by § 10–48–2" for special fuel "purchased by a person for nonhighway use who does not own or operate a special fuel powered vehicle that is propelled by the same fuel type as is being purchased in bulk or who complies with § 10–48–3.5[.]" SDCL 10–48–3(2) exempts special fuel "used for nonhighway commercial or agricultural purposes by a bulk fuel purchaser licensed pursuant to § 10–48–5.1[.]" "Nonhighway commercial use" is defined as "the use of special fuel for propelling or operating vehicles, equipment, or machinery off of public highways[.]" SDCL 10–48–1(16). On the facts

4. SDCL 10–48–2 provides:
   A tax of eighteen cents per gallon is imposed on all special fuel sold or used in this state except that special fuel exempt from the tax by § 10–48–3 and except liquefied petroleum gases which shall be taxed at the rate of sixteen cents per gallon, each to be computed in the manner set forth in this chapter. This tax shall be paid only once.

5. SDCL 10–48–54 formerly read: "The secretary of revenue may promulgate, pursuant to chapter 1–26, reasonable rules and regulations for the enforcement of this chapter." In 1987, this section was amended to its present form:
   The secretary of revenue may promulgate rules pursuant to chapter 1–26 concerning requirements for licensing, auditing, record keeping, forms and procedures, reporting and

payment of tax, enforcement and collection, tax-paid and tax-unpaid purchases, liquified petroleum gas powered motor vehicles and use and to determine the application of the tax and exemptions.

6. Department relies upon *In re State Motor Fuel Tax Liability of A.G.E. Corp.*, 273 N.W.2d 737 (S.D.1978), for the proposition that SDCL 10–48–2.1 is a separate taxing statute. This reliance is ill-founded, as the version of SDCL 10–48–2.1 construed in that case contained no direct reference to SDCL 10–48–2, unlike the current statutes. Also, *A.G.E.* is factually distinguishable because the issue before the Court was taxation of fuel used in highway construction on reservation land.

of this case, Border States is exempt under either SDCL 10–48–3(1) or (2).

Additional evidence for a more limited interpretation of SDCL ch. 10–48 is embedded in the balance of the chapter. SDCL 10–48–3.1 allows a licensed distributor to sell tax-unpaid special fuel to a purchaser who makes the following three stipulations:

(1) That the purchaser does not own or operate any special fuel powered motor vehicle on the public highway;

(2) That all of the special fuel shall be consumed by the purchaser and no special fuel purchased shall be resold; and

(3) That none of the special fuel purchased in this state shall be delivered or allowed by the purchaser to be delivered into fuel supply tanks of motor vehicles.

SDCL 10–48–3.5, regarding tax-unpaid sales of liquefied petroleum gas, provides in pertinent part:

A licensed distributor may sell liquefied petroleum gas as tax-unpaid fuel to a purchaser who owns a motor vehicle propelled by liquefied petroleum gas if such distributor delivers the gas into a bulk storage tank which has no liquid transfer line which could be used to deliver fuel into the fuel supply tank of a motor vehicle and ... none of the gas shall be delivered or allowed by the purchaser to be delivered into the fuel supply tank of a motor vehicle.... A purchaser shall obtain a bulk purchaser license pursuant to § 10–48–5.1 before receiving liquefied petroleum gas in a bulk storage tank which has a liquid transfer line which could be used to deliver fuel into the fuel supply tank of a motor vehicle....

Of particular interest are the statutes dealing with bulk purchasers of special fuel, a class which includes Border States. SDCL 10–48–5.1, referred to in SDCL 10–48–3(2), specifies those who may apply for bulk purchaser licenses, and directs that such licenses "shall allow the person to purchase tax-unpaid special fuel from a licensed distributor *except special fuel delivered into the fuel tank directly supplying a motor vehicle."* (Emphasis added.) A licensee who has purchased tax-unpaid special fuel "shall report and pay taxes to this state *on that part of the special fuel that is delivered into the fuel supply tanks of motor vehicles owned or operated by him and used on public highways....*" SDCL 10–48–5.2 (emphasis added). Importers of special fuel are likewise required to pay special fuel taxes on special fuel "withdrawn from bulk storage and delivered *into the fuel supply tanks of motor vehicles* owned or operated by him and used on public highways of this state...." SDCL 10–48–5.3 (emphasis added). These statutes support only the conclusion that special fuel taxes apply only to fuel used in motor vehicles. Special fuel not intended for vehicle fuel tanks is sold without imposition of the special fuel tax (SDCL §§ 10–48–3.1, 10–48–3.5, 10–48–5.1) and bulk purchasers are required to report and pay taxes on fuel used in motor vehicles (SDCL §§ 10–48–5.2, 10–48–5.3). This chapter does not, when read as a whole, support Department's thesis.

As the special fuel tax has no application to fuel used in hot-mix plants, the Department's regulation, ARSD 64:14:01:12 is unconstitutional, for the power to levy taxes is granted by the South Dakota Constitution Article XI to the legislature, not administrative agencies. "A ministerial officer may not, under the guise of a rule or regulation, vary or enlarge the terms or conditions of a legislative enactment." *John Morrell & Co. v. Wilder,* 72 S.D. 441, 444, 36 N.W.2d 390, 391 (1949). The trial court is therefore affirmed in reversing the Department's ruling regarding imposition of special fuel tax on these contractors.

In affirming the circuit court, we make reference to the recent unanimous opinion of this Court in *Midcontinent Broadcasting Co. v. State Dep't of Revenue,* 424 N.W.2d 153, 155 (S.D.1988), wherein Justice Miller wrote:

This is the second case in recent months in which Department, through their audit and legal departments, has attempted to stretch and strain the tax statutes in order to attempt to tax vari-

ous media entities. At oral argument, their counsel agreed that these statutes are neither sufficiently clear nor specific as to their specific intent to tax these entities in the requested manner. Would it not be more appropriate for Department to seek their remedy in the legislature, which creates the tax and its exemptions, rather than attempt to obtain their revenue through resort to judicial fiat? We believe so.

■ Department's remaining issue, the propriety of the circuit court's ruling on the applicability of SDCL 10–59–19, however, requires reversal. The record indicates that Border States paid its assessed tax and requested a refund less than a month later. SDCL 10–59–19 has no effect upon Border States' claim. The administrative hearing was devoted to the concerns of Border States, and no reference was made to time limitations. The Secretary's declaratory ruling was requested after Border States' hearing. Examination of Border States' notice of appeal to the circuit court reveals that the agency decision appealed from was that dated September 28, 1987, stemming from the administrative hearing, not the later declaratory ruling. Counsel for appellant certified that the administrative record was complete for purposes of appeal on October 14, 1987, two days before the Secretary issued his declaratory ruling. The Border States' administrative file contained no reference to the issue, and the circuit court did not require or permit additions to be made to that record as directed by SDCL 1–26–33.[7] Under SDCL 1–26–15, declaratory rulings by agencies regarding applicability of any statutory provision have the same status as agency decisions. The declaratory ruling at issue here was not the subject of Border States' appeal.

As administrative appeals are based entirely on the written record, *In re Northwestern Bell Tel. Co.,* 382 N.W.2d 413 (S.D. 1986), and the Secretary's declaratory ruling was not a part of that record, the trial court erred in deciding the matter. SDCL 10–59–1 provides that SDCL ch. 10–59 procedures apply to the administration of taxes under SDCL ch. 10–48. SDCL 10–59–9 directs that appeals are taken pursuant to the provisions of SDCL ch. 1–26. SDCL 1–26–31 requires an appellant to file, in circuit court, a notice of appeal of an agency decision. As there was no notice of appeal filed in circuit court concerning the Department's declaratory ruling, neither the circuit court nor this Court have jurisdiction over this issue. *Kulesa v. Department of Public Safety,* 278 N.W.2d 637, 638 (S.D.1979).

This reversal of the trial court's decision regarding SDCL 10–59–19 is based solely on procedural concerns. We do not reach the merits of the issue. When the Department denies a taxpayer of a refund under SDCL 10–59–19, that taxpayer may appeal that decision in the courts.

Affirmed in part, reversed in part.

MORGAN, SABERS and MILLER, JJ., concur.

WUEST, C.J., dissents.

WUEST, Chief Justice (dissenting).

I respectfully dissent. The basis for the imposition of the tax on Border States arises by virtue of SDCL 10–48–2.1, which provides:

The tax as provided by § 10–48–2 shall be paid by any person, firm, or public or private corporation on *any* fuel used in any highway construction work performed under a contract which is paid for all or in part from public funds, *regardless of whether such fuel is consumed on the public highways or not.* (Emphasis supplied).

This court previously upheld the imposition of a use tax on diesel fuel used in the construction of highways on the Rosebud Sioux and Pine Ridge Reservations in *In re State Motor Fuel Tax Liability of A.G.E. Corp.,* 273 N.W.2d 737 (S.D.1978). We stated that SDCL 10–48–2.1 is "clear and

---

7. The only copies of the Secretary's declaratory ruling submitted at any level were those in an appendix to Border States' brief to this Court.

unambiguous on its face" and that there is "no reason for attempting a strained or forced construction of the words therein." *Id.* at 742, 743. When we are presented with such clear, certain, and unambiguous language, our only function is to declare "the meaning of the statute as clearly expressed in the statute." *Petition of Famous Brands, Inc.,* 347 N.W.2d 882, 885 (S.D.1984) *citing Matter of Aiken,* 296 N.W.2d 538, 540 (S.D.1980); *State Highway Comm'n v. Wieczorek,* 248 N.W.2d 369, 372 (S.D.1976); *Kalmbach v. City of Mobridge,* 81 S.D. 158, 162, 132 N.W.2d 293, 295 (1964); *State ex rel. Widdoss v. Esmay,* 72 S.D. 270, 273, 33 N.W.2d 280, 282 (1948).

The majority relies upon an examination of the legislative history of SDCL 10–48–2.-1. Resorting to legislative history, however, is justified "only when legislation is ambiguous, or its literal meaning is absurd or unreasonable." *Petition of Famous Brands,* 347 N.W.2d at 885. In the ab-sence of these circumstances, we must give legislation its plain meaning. *Id.*

Applying the foregoing principles, I disagree with the majority's interpretation as to the application of the statutes in question to Border States' circumstances. I find no ambiguity or obscurity in the language of SDCL 10–48–2.1. The statute clearly imposes a separate tax on *any* fuel used in highway construction projects paid for wholly or partially from the public coffers. It matters little, if at all, that such fuel is not consumed *on* the public highways. The facts of the present case clearly satisfy the criteria necessary for the imposition of the special fuel tax under SDCL 10–48–2.1. I would reverse.