**STATE of South Dakota, Plaintiff and Appellee,**

v.

**James S. STAPLETON, Defendant and Appellant.**

**No. 14987.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 13, 1986.

Decided April 30, 1986.

Grant Gormley, Chief Deputy Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Douglas E. Kludt of Churchill, Manolis, Freeman & Volesky, Huron, for defendant and appellant.

JOHNSON, Circuit Judge.

James S. Stapleton (appellant) was convicted by a Beadle County jury on May 3, 1985, of aggravated assault. Appellant appeals from the judgment of conviction. We affirm.

On the third floor of Kerr Hall, a boys' dormitory on the Huron College Campus, a number of boys were watching television in the dormitory lounge shortly after midnight on April 5, 1985. There were two rows of seats facing the television, one directly in front of the other, the back row against the wall. The room was dark ex-

cept for the light emitted from the television. The television's volume was loud.

Appellant entered the room in an intoxicated state and sat down in the back row of seats between Kelly Mitchell and Michael Clark, and directly behind Ralph Newton (Newton). Appellant withdrew a handgun from his coat pocket and began to verbally abuse Newton, pointing the gun at the back of Newton's head. Appellant, with gun drawn, yelled at Newton, stating that he wanted to fight. Newton ignored appellant. Appellant pocketed his pistol and continued to verbally abuse Newton. Finally, Newton turned and faced appellant and began arguing with him. Felipe Alvarez (Alvarez) told Newton in Spanish that appellant had a gun. Newton continued to argue for approximately three more seconds before Newton's roommate grabbed Newton and took him out of the room. Newton testified that he was scared when Alvarez told him that appellant had a gun.

At no time during the forementioned sequences did Newton ever see appellant's pistol. Newton was totally unaware that appellant had a gun until Alvarez's warning. A handgun of identical description was later found in a trash can in the third floor men's restroom. The gun was loaded with one round in the chamber and the safety was off.

The first question presented is whether the trial court erred in denying appellant's motion for judgment of acquittal. State's position is that it met its burden of proving a prima facie case and the trial court made a proper ruling. We agree.

A motion for judgment of acquittal is made pursuant to SDCL 23A-23-1. When considering a motion for judgment of acquittal, the trial court must consider the evidence in the light most favorable to the nonmoving party and give the nonmoving party the benefit of all reasonable inferences in its favor. *State v. Bult,* 351 N.W.2d 731 (S.D.1984); *State v. Wellner,* 318 N.W.2d 324 (S.D.1982); *State v. Gallegos,* 316 N.W.2d 634 (S.D.1982). A motion for judgment of acquittal is properly denied if the State had introduced evidence from which, if believed, the jury may reasonably find appellant guilty of the crime charged. *Bult, supra; State v. Blakey,* 332 N.W.2d 729 (S.D.1983); *Wellner, supra; Gallegos, supra.*

Appellant was found guilty by a jury of committing an aggravated assault upon the person of Newton, in violation of SDCL 22-18-1.1(5).* That section states, in pertinent part: "Any person who: ... (5) Attempts by physical menace with a deadly weapon to put another in fear of imminent serious bodily harm; is guilty of aggravated assault....."

Appellant alleges that State has the burden of proving, as an element of the crime of aggravated assault, that the victim was aware of the gun at the time it was pointed at him. We find that neither the statute nor our subsequent rulings require an awareness causing imminent fear on the part of the victim as a prerequisite to a conviction for aggravated assault per SDCL 22-18-1.1(5).

Initially, we find the precise wording of SDCL 22-18-1.1(5) very persuasive: "Any person who: ... (5) Attempts by physical menace with a deadly weapon to put another in fear of imminent serious bodily harm; is guilty of aggravated assault...." We believe the South Dakota Legislature has

---

* SDCL 22-18-1.1 reads, in full:

Any person who:

(1) Attempts to cause serious bodily injury to another, or causes such injury, under circumstances manifesting extreme indifference to the value of human life;

(2) Attempts to cause, or knowingly causes, bodily injury to another with a dangerous weapon;

(3) Attempts to cause or knowingly causes any bodily injury to a law enforcement officer or other public officer engaged in the performance of his duties; or

(4) Assaults another with intent to commit bodily injury which results in serious bodily injury;

(5) Attempts by physical menace with a deadly weapon to put another in fear of imminent serious bodily harm;

is guilty of aggravated assault. Aggravated assault is a Class 4 felony.

spoken with a clear voice in defining this crime as an attempt.

In *State v. Dennis,* 294 N.W.2d 797, 798–99 (S.D.1980), we noted that

[t]he various punishments prescribed by SDCL 22–4–1 for attempted crimes are applicable only in those cases in which the law makes no other provision for the punishment of such attempts. SDCL 22–18–1.1 classifies an attempt to cause bodily injury as a Class 4 felony, the punishment of which is set forth in SDCL 22–6–1(5).

While we dealt with SDCL 22–18–1.1(3) in *Dennis,* we believe the legislature intended to use the word "attempt" in SDCL 22–18–1.1(5) as it did in SDCL 22–18–1.1(3), as a method of committing the public offense of aggravated assault.

In *Commonwealth v. Slaney,* 345 Mass. 135, 139, 185 N.E.2d 919, 922 (1962) *citing* Perkins on Criminal Law § 89 (1957), defendant also argued that a conviction for criminal assault must include proof of fear and terror on the part of the victim. The court therein stated:

The criminal law is designed primarily to preserve the public peace. The imperturbability or fortitude of a victim, or the unawareness of an intended victim, ... should not afford a defense to the criminal prosecution of the wrongdoer. The guilt or innocence of a person charged with assault 'depends entirely upon what the wrongdoer does and intends and not at all upon what the other apprehends, or does not apprehend.'

Appellant has cited *State v. Heumiller,* 317 N.W.2d 126 (S.D.1982), for the proposition that the victim must be placed in "fear of imminent serious bodily harm." Appellant quotes a portion of the opinion wherein we stated that "[t]he gravamen of the offense is ... whether the [gun] was used to put the victim in fear of imminent serious bodily injury." *Id.* at 131.

Appellant's reliance on *Heumiller* is misplaced. There we were faced with the question whether the introduction of a shotgun constituted prejudicial error. While the defendant therein was charged under the same aggravated assault statute, SDCL 22–18–1.1(5), in *Heumiller* we were concerned with the element "with a deadly weapon." We noted that an unloaded gun could be a "deadly weapon" for purposes of the statute if the victim is unaware that it is unloaded. The following discussion was clearly based on the assumption that the victim was aware of the gun. Therein we stated:

SDCL 22–18–1.1(5) (aggravated assault) must be viewed from the perspective of the victim. The gravamen of that offense is the fear it instills in the mind of the victim who ordinarily does not know whether the firearm is in fact loaded. It is that unknown, however, which perpetrates the fear. Conversely if the victim knows the firearm is not loaded, then it is likely less than a deadly weapon. Absent that knowledge the victim must assume that a weapon, deadly by design, is in fact ready to dispense instant death. Subsequent knowledge that the firearm was not loaded does nothing to diminish the fear the victim experienced at the time of the assault. Consequently, in the absence of evidence that the victim knew the gun was unloaded, it is deemed loaded for the purposes of proving the element of fear and any evidence bearing in retrospect on whether it was loaded or unloaded is irrelevant.

*Heumiller,* 317 N.W.2d at 131. As can be readily discerned, in *Heumiller* we did not state that actual "fear of imminent serious bodily harm" was an element of aggravated assault as appellant contends; rather, we did no more than discuss the nuances of the element "with a deadly weapon." Furthermore, the portion of *Heumiller* quoted above by appellant also pertains to the element "with a deadly weapon," as can be discerned from a full reading of that passage: "[T]he gravamen of the offense is not whether the gun was in fact loaded, but whether the [gun] was used to put the victim in fear of imminent serious bodily injury." *Id.* at 131.

 We find, therefore, that "fear of imminent serious bodily harm" is not an

essential element of aggravated assault per SDCL 22–18–1.1(5). We hold that State did present a prima facie case showing that appellant did *attempt* to put Newton in fear of imminent serious bodily harm. "Attempt" is defined in SDCL 22–4–1 as where one "attempts to commit a crime and in the attempt does any act toward the commission of the crime, but fails or is prevented or intercepted in the perpetration thereof[.]" It is undisputed that appellant held a gun to Newton's head. The only thing which prevented appellant from succeeding in putting Newton in fear of imminent serious bodily harm was the fact that Newton chose to ignore appellant during the period when appellant was wielding his gun. The trial court properly denied appellant's motion for judgment of acquittal.

The second question presented is whether the trial court erred by giving Jury Instruction No. 16. It is State's position that appellant has failed to demonstrate that the trial court committed reversible error. We agree.

During the settling of instructions, defense counsel made a timely objection to Instruction No. 16. Said objection was overruled and given to the jury. Instruction No. 16 provided as follows:

> You are the exclusive judges of the credibility of witnesses who have testified in this case. That means you must decide what witnesses are to be believed and how much weight, if any, is to be given the testimony of each witness.
>
> In determining the credibility of the witnesses, you may consider anything which tends in reason to prove or disprove the truthfulness of their testimony; such as, there conduct, attitude and manner while testifying; whether the facts testified to by them are inherently believable or unbelievable; their capacity to hear or see that about which they testified and their ability to recollect or to relate such matters; whether or not there was any bias, interest, or motive for them not to tell the truth; any statement previously made by them that was inconsistent with their testimony.
>
> If you believe that a witness willfully lied as to a material fact, you should distrust the rest of that witness' testimony and you may, but are not obligated to, disregard all of that person's testimony. However, you should bear in mind that such discrepancies in a witness' testimony or between that person's testimony and that of others, if there was any, does not necessarily mean that you should disbelieve the witness, as failure of recollection is a common experience and an innocent misrecollection is not uncommon. You are all certainly aware of the fact that two persons witnessing the same incident often will see or hear it differently.
>
> Also in considering a discrepancy in a witness' testimony, you should consider whether such discrepancy concerns an important fact or only a trivial detail.

■ We have previously held that it is not error to refuse to give jury instructions which are already embodied in other given instructions. *State v. Cook*, 319 N.W.2d 809 (S.D.1982); *State v. Grey Owl*, 295 N.W.2d 748 (S.D.1980). Jury instructions are adequate when, considered as a whole, they give the full and correct statement of the law applicable to the case. *Cook, supra; Grey Owl, supra.* Appellant has the burden to show not only error, but prejudicial error to the effect that under the evidence, the jury might and probably would have returned a different verdict if appellant's instructions had been given. *Cook, supra; Grey Owl, supra; Lytle v. Morgan*, 270 N.W.2d 359 (S.D.1978).

Appellant challenges the third, fourth and fifth paragraphs of this instruction. The third paragraph is the trial court's version of the *Falsus In Uno* pattern instruction. That instruction provides: "If you believe that any witness has knowingly sworn falsely to any material fact in the case, you may reject all of the testimony of any such witness." South Dakota Pattern Jury Instruction 1–19–1. Specifically, appellant challenges the words "willfully

lied" in the court's instruction as ambiguous. Appellant alleges that the trial court did not provide a definition of the word "willfully" to the jury and that the word "lied" carries indistinct moral and religious connotations.

 The court finds no basis in such assertions. "Willfully lied" has no different connotations than "knowingly sworn falsely." In *State v. Stewart*, 73 Wash.2d 701, 440 P.2d 815 (1968), the Washington Supreme Court stated that the term "willfully" is not ambiguous. Furthermore, appellant has shown nothing prejudicial about using the word "lied" instead of "sworn falsely."

Appellant challenges the language in the fourth paragraph, claiming that the instruction directs the jury to ignore discrepancies in a witness' testimony or between a witness' testimony and the testimony of others. Finally, appellant argues that the final paragraph commands the jury to disregard trivial discrepancies, thus invading the fact finding function of the jury, as several trivial matters could lead a juror to find reasonable doubt.

Appellant has misquoted the instruction in question. Paragraph four does not instruct the jury to *ignore* discrepancies in a witness' testimony. Rather, it uses the words "should bear in mind" and "does not necessarily mean you should disbelieve the witness." Similarly, paragraph five does not "command the jury to disregard trivial discrepancies." Rather, it simply instructs that the juror "should consider" whether discrepancies concern an important fact or a trivial detail. Both paragraphs merely instruct the jury in matters they *should* consider.

Appellant has not sustained his burden of showing prejudicial error as a result of the language contained in these paragraphs.

Although we do not find any prejudicial error as a result of the giving of Instruction No. 16, we do not recommend the use of this instruction in our trial courts. We believe the giving of this instruction may be more likely to confuse rather than clarify the jurors' understanding of their role as a finder of fact and as a judge of witness' credibility.

The judgment of the trial court is affirmed.

MORGAN, HENDERSON and WUEST, JJ., and HERTZ, Circuit Judge, Acting as Supreme Court Justice, concur.

JOHNSON, Circuit Judge, sitting for FOSHEIM, C.J., disqualified.

SABERS, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.